```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EXPEDITORS INTERNATIONAL OF          |
WASHINGTON, INC.,                    |
                                     |
                  Plaintiff,         |
                                     |    MEMORANDUM and ORDER
       — against —                   |
                                     |    03 CV 3333 (SLT)(WDW)
RUBIE'S COSTUME COMPANY, INC.,       |
                                     |
                  Defendant.         |
-------------------------------------------------------X
```

**TOWNES, United States District Judge:**

Expeditors International of Washington, Inc. ("Plaintiff" or "Expeditors") is a major international freight forwarder and consolidator. Defendant Rubie's Costume Co., Inc. ("Defendant" or "Rubie's") is a manufacturer and distributor of costumes and a customer of Plaintiff. After Defendant failed and refused to pay for certain shipments of raw materials, Plaintiff commenced an action against Defendant in this Court. In a decision dated May 22, 2006, the Court found Defendant liable for breach of contract and awarded judgment on June 21, 2006 in favor of Plaintiff. Expeditors now moves against Defendant pursuant to Fed. R. Civ. P. 54(d)(2)(A) and (B) for an award of attorneys' fees in the amount of $79,168.00 and non-taxable expenses in the amount of $4,961.54. For the reasons set forth below, Plaintiff's motion is granted.

## DISCUSSION

*Attorneys' Fees*

Unlike numerous cases in which a party has sought attorneys' fees pursuant to a fee-shifting statute, this is a diversity case in which two large and sophisticated commercial businesses have contractually agreed that Plaintiff is entitled to collect fees as part of

enforcement of the parties' contract. The contract between Plaintiff and Defendant contained the following provision: "In any referral for collection or action against the Customer for monies due to [Plaintiff], upon recovery by [Plaintiff], the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee, plus 18% interest per annum compounded daily." (Declaration of David H. Pikus[1] ("Pikus Decl.") at ¶ 4.) In support of its motion, Plaintiff has submitted a declaration of attorney Pikus which summarizes the nature of the work performed and the number of hours billed as well as copies of invoices which reflect the actual fees incurred by Plaintiff in this matter.

Although Defendant does not dispute its contractual obligation to Plaintiff, Defendant argues that the motion for fees should be reduced or denied for two reasons. First, Defendant asserts that because Plaintiff failed to produce certain documents which it claimed were necessary to its defense, Plaintiff's award of attorneys' fees should be reduced. Defendant claims that but for Plaintiff's purported failure to produce these documents, the litigation might have been resolved prior to trial or at least would not have been as costly. From the outset, Plaintiff informed Defendant's counsel that they did not think it was necessary to produce the documents but would attempt to do so at Defendant's insistence. The Court agreed with Plaintiff, determining that Plaintiff was under no legal obligation to produce the documents. The Court also notes that Plaintiff offered to mediate the issues with Defendant before trial, but Defendant refused to do so. Defendant made the decision to go to trial and must, pursuant to the parties' contract, pay the attorneys' fees that Plaintiff incurred.

---

[1]David Pikus, a partner with Bressler, Amery & Ross, P.C., represented Plaintiff in this matter.

Defendant also argues that the rate and amount of fees is too high. Under New York law, when a contract provides for attorneys' fees, the court must order the losing party to pay the amount actually incurred, so long as those amounts are reasonable. *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir. 1987); *see also Sony Music Entertainment, Inc. v. Pedestal Productions, Inc.*, No. 01-4033, 2002 WL 1226861, at *4 (S.D.N.Y. April 9, 2002); *Goldberg v. Blue Ridge Farms, Inc.*, No. 04-5098, 2005 WL 1796116, at *3 (E.D.N.Y. July 26, 2005).[2] Plaintiff argues that the rates paid to its attorney, Mr. Pikus, are reasonable and also notes that its requested hourly rates appear to be lower than those which Defendant paid its own attorneys. Plaintiff argues that, under these circumstances, the Court should award Plaintiff the sum it has paid its counsel.

The Court agrees that Plaintiff's hourly rate is reasonable. In the Second Circuit, attorneys' fees are determined according to the "lodestar" method, pursuant to which the reasonable number of hours spent is multiplied by a reasonable hourly rate. *I.B. v. New York City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003). The Supreme Court has instructed that hourly billing rates should be "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). It is well-established that the relevant community a district court should consider to determine the lodestar figure is normally "the district in which the court sits." *Reiter v. MTA New York City Transit Authority* 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

---

[2] New York courts frequently look to federal case law in determining whether an award of attorney's fees is reasonable. *See, e.g., Bell v. Helmsley*, No. 111085/01, 2003 WL 21057630, at *1 (N.Y. Sup. Ct. March 27, 2003).

Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners at law firms. *See Burgie v. Euro Brokers, Inc.*, No. 05-968, 2006 WL 845400, at *18 (E.D.N.Y. Mar. 30, 2006); *see also Commission Express Nat'l, Inc. v. Rikhy*, No. 03-4050, 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) (a partner may be billed at $300 per hour); *General Motors Corp. v. Villa Marin Chevrolet, Inc*. 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002) ($315 to $375 appropriate for partners based upon detailed description of experience and expertise). Although Mr. Pikus's requested hourly rate of $340-$370[3] is on the high side for what is considered reasonable in this District, the Court finds it is appropriate given Mr. Pikus's 25 years of commercial litigation experience. (Pikus Decl. at ¶ 18.) He has litigated numerous cases in the Southern and Eastern Districts, as well as argued in the Court of Appeals For the Second Circuit, and has also been appointed Special Master in major cases in the Southern District of New York.[4] (Pikus Decl. at ¶¶ 19-20.) In finding that Mr. Pikus's hourly rate is reasonable, the Court also notes his client's complete success on its claims at trial. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 208 (E.D.N.Y. 2006) ("In light of [the attorney's] demonstrated skill and the success he has achieved in this case, I find sufficient circumstances present to justify compensating him at a rate that is at the high end of those prevailing in this district.").

The Court next turns to the question of whether the number of hours expended by Plaintiff's counsel was reasonable. Defendant objects to the number of hours Mr. Pikus spent on the case, claiming much of the work could have been handled by more junior attorneys. The

---

[3] Counsel's hourly rates increased over the course of the litigation.

[4] Mr. Pikus was the Special Master for the attorneys' fee determination in *Goldberger v. Integrated Resources, Inc*. 209 F.3d 43 (2d Cir. 2000), a leading case on attorneys' fee awards in the Second Circuit.

Court notes that Mr. Pikus conducted or defended five separate depositions himself, prepared for and conducted the two day trial, and prepared a pre-trial memorandum and detailed post-trial memorandum.  Mr. Pikus's research, a small percentage of the overall time on this case, largely pertained directly to litigation strategy or areas with which he was familiar and therefore could research in less time.  As Plaintiff correctly argues, an attorney's time will not be reduced when, as here, "research pertained to issues such as litigation strategy and discovery." *New York State Teamsters Conference Pensions & Retirement Fund v. United Parcel Service, Inc*., No. 98-1902, 2004 WL 437474, at *4 (N.D.N.Y. Feb. 27, 2004).  After reviewing Plaintiff's time records, the Court determines that Mr. Pikus's research and discovery tasks were appropriate given his familiarity with the client and the freight industry,[5] which enhanced his efficiency in the handling of these matters.   The Court finds the number of hours expended by Mr. Pikus was reasonable.  Therefore, Plaintiff shall be awarded the sum it has paid its counsel.

***Non-taxable Expenses***

Fed. R. Civ. P. 54(d)(2) also provides for the award of "related non-taxable expenses." This provision applies "to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees."  Fed. R. Civ. P. 54(d)(2) (advisory committee notes).  Such costs include messenger services, photocopying, and legal research, and are detailed in bills accompanying Mr. Pikus's affidavit.  The Court awards Plaintiff these non-taxable expenses in the amount of $4,961.54.

---

[5] The Court notes that Mr. Pikus has represented Expeditors for over twenty years.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for an award of attorneys' fees in the amount of $79,168.00 and related non-taxable expenses in the amount of $4,961.54 is granted.

SO ORDERED.

Dated: Brooklyn, New York
       February 2, 2007

SANDRA L. TOWNES
United States District Judge